half the net amounts received by him upon protests filed after the dissolution of the partnership for importers with whom said "contracts" had been made and still continued unrevoked, and to whom notice of dissolution of the firm had not been given. Having been made with the partnership, they continued to belong to it.

In other respects I concur in the opinion of Mr. Justice SCOTT.

———

LEHIGH & H. R. RY. CO. v. CENTRAL TRUST CO. OF NEW YORK.

(Supreme Court, Appellate Division, Second Department. June 11, 1909.)

RAILROADS (§ 166*)—MORTGAGES—CONSTRUCTION AND OPERATION.

> Plaintiff, a railroad company, for the purpose of securing an issue of bonds, executed and delivered to defendant, a trust company, a mortgage on all its railroad property, together with 2,000 shares of the capital stock of the O. Railroad Company, a subsidiary company operated in connection with plaintiff's company. The mortgage provided that certain of the bonds should be reserved and delivered to the railroad company from time to time at the rate of $30,000 per mile for every mile of additional railroad acquired by the railroad company either by construction or purchase. *Held* that, on consolidation of plaintiff company and the O. Company, plaintiff was not entitled to an issue of $30,000 in bonds for every mile of the O. Railroad thereby acquired, as such additional bonds were not to be issued where there was merely a change in the form of ownership of the railroad property already covered by the mortgage, but only when a new line was added to that which was already in control of the mortgagor.
>
> [Ed. Note.—For other cases, see Railroads, Cent. Dig. § 516; Dec. Dig. § 166.*]

> Hirschberg, P. J., dissenting.

Appeal from Special Term, Orange County.

Action by the Lehigh & Hudson River Railway Company against the Central Trust Company of New York. Judgment for plaintiff, and defendant appeals. Judgment reversed in part.

Argued before HIRSCHBERG, P. J., and WOODWARD, BURR, RICH, and MILLER, JJ.

Arthur H. Van Brunt (Leland B. Garretson, on the brief), for appellant.

Henry Bacon, for respondent.

WOODWARD, J. This is an action in equity to compel the defendant, as trustee under the general mortgage of the Lehigh & Hudson River Railway Company, dated July 1, 1890, to deliver certain bonds reserved under the provisions of article 19, subd. 2, of said mortgage, and the only question presented upon this appeal is the proper construction of the mortgage contract. The learned court at Special Term has construed the contract according to the contention of the plaintiff, and has directed the defendant, as trustee, to issue the bonds in controversy. The defendant appeals from so much of the judgment as directs this issue, though in form the appeal is from the entire judgment; this being inadvertent.

On the 1st day of July, 1890, the Lehigh & Hudson River Railway

Company, for the purpose of securing its issue of $3,000,000 5 per cent. 30-year gold bonds, made, executed, and delivered to the Central Trust Company of New York, as trustee, its general mortgage. By the granting clause the mortgagor conveyed to the trustee all its railroad, beginning at Greycourt, in Orange county, N. Y., and continuing to the terminus of said road at Belvidere, in Warren county, N. J., being about 63 miles in length, including all lands, water rights, and all property of every name and nature, and all privileges and franchises acquired, "together with all streets, ways, alleys, passages, waters, water courses, easements, rights, liberties, privileges, hereditaments, and appurtenances whatsoever unto any of the hereby granted and mentioned premises and estates belonging and appertaining, or to belong and appertain, and the reversions and remainders, rents, issues, and profits thereof, and all the estate, right, title, interest, property, claim, and demand, of every nature and kind," of the railroad company; that is, the mortgage undertook to place the mortgagee in exactly the same position that the railroad company occupied in respect to the railroad and its property rights, so that, in the event of the foreclosing of the mortgage, the trustee would take all that the railroad company owned in connection with the railroad property. In addition to the above property there was also pledged as further security 2,000 shares of the capital stock of the Orange County·Railroad Company, of the par value of $100 each, this constituting the entire capital of the company; 750 shares of the capital stock of the South Easton & Phillipsburg Railroad Company, of the par value of $100 each; and 1,500 shares of the capital stock of the South Easton & Phillipsburg Railroad Company of Pennsylvania, of the par value of $50 each. The granting clause also conveyed all rolling stock and equipment, with certain lease rights, and all after-acquired property, and the mortgage provided that until there was a default the railroad company was to retain possession and control of the property, and to receive and use the tolls, incomes, rents, revenues, issues, and profits thereof. There was a provision that 50 shares of stock in each of the corporations whose stock was included in the mortgage should be held out for the purpose of qualifying directors, but all to be held subject to the trust provided in the mortgage.

It appears that these several corporations, whose stock was thus mortgaged, were operated in connection with the Lehigh & Hudson River Railroad Company's railroad. Indeed, it may be gathered from the record that the Orange County Railroad was practically constructed by the Lehigh· & Hudson River Railway Company, which owned all of its stock, and that at various times subsequent to the making of the mortgage the plaintiff advanced money to the Orange County Company to pay its operating expenses; that company having no equipment, and serving no other purpose than as a means of reaching the plaintiff's practical terminal. It was, therefore, provided in the mortgage that:

"The assignment of the aforesaid shares of stock shall not prevent the consolidation and merger of any one or more of the companies, the stock of which is hereby mortgaged, with any other or others of said companies, or with the Lehigh & Hudson River Railway Company, or the purchase of the railroad and

property of any one or more of said companies by the Lehigh & Hudson River Railway Company; but such consolidation and merger or purchase may be made under any existing or future laws, anything in this mortgage contained to the contrary notwithstanding. Upon such consolidation and merger or purchase, the railroad company shall duly execute and deliver a supplemental mortgage conveying to the trustee all the railroad and other property so consolidated and merged or purchased, to be held by it under the terms hereof, with like effect as if specifically described herein, and the trustee shall, upon the request of the railroad company, deliver up to it all the certificates of stock of the company so consolidated and merged or the railroad of which company has been purchased, which may have been deposited under this mortgage."

Clearly the purpose of this provision was to substitute the property of the merged corporation for the stock which was delivered under the mortgage. It was to make the lien apply to the tangible property in the place of the representative of that property which had already been deposited, and in practical effect contemplated no actual change in the situation of the parties. The mortgage provided, among its many terms, that the trustee should authenticate and deliver to the railroad company upon its written request all bonds secured thereby, except $1,750,000 par value thereof, which were reserved for the purpose of taking up certain prior issues therein mentioned, and $330,000 par value of said bonds, in respect to which the mortgage provided that:

The "general mortgage bonds so secondly excepted from certification shall nevertheless be certified by the trustee and delivered to the railroad company from time to time upon its written request at the rate of $30,000 per mile for every mile of additional railroad acquired by the railroad company, either by construction or purchase, whether such purchase be evidenced by conveyance or by securities representing the ownership thereof: Provided, however, that such additional railroad, or the securities representing the same, shall be made subject to the terms of this mortgage as further security to the bonds secured hereby."

Subsequently, the Orange County Railroad Company being indebted to the Lehigh & Hudson River Railway Company to the extent of $342,326.43, steps were taken which resulted in the consolidation of that corporation with the plaintiff, and a supplemental mortgage, complying with the terms of the original mortgage, was made and executed and delivered to the defendant, and the plaintiff thereby became entitled to the delivery of the 2,000 shares of stock which it had deposited with the defendant. The defendant does not question this right, which is a part of the relief demanded; but it does deny that the plaintiff, by taking over the Orange County Railroad Company's line, consisting of something over 10 miles of track, became entitled to the certification and delivery of $300,000 of par value bonds under the provision for acquiring additional railroad to be found in the nineteenth provision of the mortgage, and quoted in part above.

Notwithstanding that the learned court below has found in favor of the plaintiff, we are unable to construe this contract in harmony with the decision. The original mortgage had conveyed to the trustee, for those who were to become the bondholders, all the property, of. every kind and character, which it owned, including all of the stock of the Orange County Railroad Company, which was undoubtedly

organized for the very purpose of consolidation with the Lehigh & Hudson River Railway, and the value of the plaintiff's road concededly hinged very largely upon this Orange County Railroad, which afforded the connecting link in its road with other carriers. The stock represented the ownership of the road, and while it is probably true, as a matter of law, that its indebtedness to the plaintiff was a matter to be provided for before this ownership could have been made available to the bondholders, the mortgage unquestionably contemplated that it was taking over the entire property as it was being operated, subject to its operating expenditures, and this is what the Orange County indebtedness appears to have been made up of, and was, in all probability, a mere matter of bookkeeping in the practical operation of the line as a whole, pending the consolidation. All of this was provided for in the fifteenth paragraph. There was express permission to do just what was done, and the details were all arranged at that time and for that contingency. The nineteenth paragraph was dealing with another situation. There were $330,000 par value of bonds not disposed of by the agreement. No one was authorized to certify these for issuance under the mortgage, and to provide for this, and to provide for the extension of the railroad, it was written that these bonds should—

"be certified by the trustee and delivered to the railroad company * * * at the rate of $30,000 per mile for every mile of additional railroad acquired by the railroad company, either by construction or purchase, whether such purchase be evidenced by conveyance or by securities representing the ownership thereof."

The meaning is clear. This $330,000 of bonds was to be issued for newly acquired road, either by construction of new road, or the taking over of the securities, representing the ownership, as had been done in the case of the Orange County Railroad Company and others. 'Additional railroad" did not mean merely a change in the form of ownership of the railroad property already covered by the mortgage, but new line added to that which was already in the control of the mortgagor. Any other construction of this proposal on the part of the plaintiff to those who were to purchase these bonds does violence to language, and operates to lessen the value of the securities which are now outstanding, and which have been purchased in reliance upon this proposition made by the plaintiff. The mortgage, in equitable contemplation, not only conveyed the road and its equipment, subject to the terms of the mortgage, but it conveyed the earnings. These could not be diverted from the legitimate purposes of the railroad, and such of them as were required for the operation of the Orange County Railroad were properly used, and, if these advances constituted the purchase price of the property, this was all provided for in the fifteenth clause of the agreement under which the trustee holds the property. The further provision in the nineteenth clause is to provide means for constructing or purchasing "additional railroad," either directly, or, as had already been done in the case of the Orange County Railroad, by taking the stock "representing the ownership thereof." It is a very common practice with railroad corporations, to effect a change in route or to reach a destination not originally contemplated,

to organize an independent corporation, construct the road, and then, under the provisions of the general railroad law, to consolidate the new line with the old; and this is done by advancing the money and holding the stock as the representative of the ownership, and this mortgage clearly contemplated that something of this kind might be desirable. The language used is proper for this purpose; but it is entirely inconsistent with the contention of the plaintiff, which now seeks, under a forced construction of its own language, to pour $300,000 of "water" into an issue of $3,000,000 of bonds.

The judgment, except in so far as it provides for returning the stock of the Orange County Railroad, should be reversed, with costs. All concur, except HIRSCHBERG, P. J., who dissents.